# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Robert Steven Latlip, | ) | No. CV 07-1315 PHX-NVW (ECV) |
| Petitioner, | ) | |
| | ) | **ORDER** |
| v. | ) | |
| | ) | |
| Dora B. Schiro, et al., | ) | |
| | ) | |
| Respondents. | ) | |

After a bench trial, Petitioner Robert Steven Latlip ("Latlip") was convicted and sentenced in state court on numerous counts for the violent kidnaping and rape of two women in the Phoenix area. Pending before the court is the Report and Recommendation ("R&R") of Magistrate Judge Voss (Doc. # 22) regarding Latlip's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 (Doc. # 1). The R&R recommends that the Petition be denied and dismissed with prejudice. The Magistrate Judge advised the parties that they had ten days to file objections to the R&R. (R&R at 14, citing 28 U.S.C. § 636(b)). Latlip filed objections on November 20, 2008. (Doc. # 25.)

The court has considered the objections and reviewed the R&R de novo. *See* Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1) (stating that the court must make a de novo determination of those portions of the Report and Recommendation to which specific

objections are made). The court agrees with the Magistrate Judge's determinations, accepts the recommended decision within the meaning of Rule 72(b), Fed. R. Civ. P., and overrules Latlip's objections. *See* 28 U.S.C. § 636(b)(1) (stating that the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate").

Insofar as the Magistrate Judge also ruled on any non-dispositive matters, error may not be assigned to any defect in those rulings to the extent that an aggrieved party did not file a timely objection. Fed. R. Civ. P. 72(a) ("A party may serve and file objections to the order within 10 days after being served with a copy [of the magistrate's order]. A party may not assign as error a defect in the order not timely objected to."). The absence of a timely objection precludes later assignment of error in this court or in any higher court of the non-dispositive rulings of a magistrate judge. *Simpson v. Lear Astronics Corp.*, 77 F.3d 1170, 1174 (9th Cir. 1996); *Philipps v. GMC*, 307 F.3d 1206, 1210 (9th Cir. 2002).

Although the magistrate's report is accepted, two issues raised in Latlip's habeas petition warrant further explanation. Both of them arise out of his Sixth Amendment right to effective representation. To prevail on a habeas corpus petition under AEDPA, a petitioner must demonstrate that the state court's decision on the merits was contrary to, or involved an unreasonable application of, clearly established federal law under United States Supreme Court precedent. *Lockyer v. Andrade*, 538 U.S. 63, 70-73 (2003). Where the state court decides an issue that is an open question under the Supreme Court's jurisprudence, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'" *Carey v. Musladin*, 127 S. Ct. 649, 653 (2006) (quoting § 2254). If the state court decision was an unreasonable application of clearly established federal law, then the court must determine whether the petitioner's constitutional rights were violated without deference to the state court decision. *Frantz v. Hazey*, 533 F.3d 724, 735 (9th Cir. 2008).

### I.     Failure to Appeal Fourth Amendment Issue

Before trial, the state court judge denied a motion to suppress certain blood evidence drawn from Latlip.  Although the court concluded that the blood was obtained without the probable cause required under *Schmerber v. California*, 384 U.S. 757, 767-68 (1966), the court allowed the evidence under the inevitable discovery rule.  Latlip contends in his third ground for habeas relief that he received ineffective assistance of counsel because his lawyer declined to appeal this ruling.

To prevail on an ineffective assistance claim relating to appellate representation, Latlip "must show that counsel's advice fell below an objective standard of reasonableness, and that there is a reasonable probability that, but for counsel's unprofessional errors, [Latlip] would have prevailed on appeal."  *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)).

Latlip claims that he asked his counsel to include the Fourth Amendment issue in the direct appeal.  Counsel declined, informing Latlip that the issue could be raised in post-conviction proceedings.  Either defense counsel made this statement in error, or he was referring to the possibility of an ineffective assistance claim, although it would seem paradoxical for an attorney to advertise his chosen legal strategy as ineffective assistance.  In either case, the analysis is the same, because the strategic choice whether or not to raise the Fourth Amendment issue on appeal lay within the decisionmaking power of Latlip's counsel.

"The adversary process could not function effectively if every tactical decision required client approval."  *Taylor v. Illinois*, 484 U.S. 400, 418 (1988).  "An attorney undoubtedly has a duty to consult with the client regarding important decisions, including questions of overarching defense strategy.  That obligation does not require counsel to obtain the defendant's consent to every tactical decision."  *Florida v. Nixon*, 543 U.S. 175, 187 (2004) (internal quotation marks and citation omitted).  The Ninth Circuit has

explained how these Sixth Amendment principles intersect with the basic limitations of appellate advocacy:

> Like other mortals, appellate judges have a finite supply of time and trust; every weak issue in an appellate brief or argument detracts from the attention a judge can devote to the stronger issues, and reduces appellate counsel's credibility before the court. For these reasons, a lawyer who throws in every arguable point—"just in case"—is likely to serve her client less effectively than one who concentrates solely on the strong arguments. Appellate counsel will therefore frequently remain above an objective standard of competence (prong one) and have caused her client no prejudice (prong two) for the same reason—because she declined to raise a weak issue.

*Miller*, 882 F.2d at 1434. This reasoning applies directly to the instant case.

Counsel's dubious statement to Latlip does not render the decision objectively unreasonable or prejudicial; his decision was supported by the circumstances. Latlip's Fourth Amendment argument was especially weak. Nor was there a reasonable probability that Latlip would have prevailed on appeal but for his counsel's decision. His ineffective assistance claim satisfies neither prong of the *Miller* analysis.[1]

The trial court found that police would inevitably have obtained the probable cause necessary to draw Latlip's blood. An investigating officer testified that before the blood test results were obtained, and without making any use of the blood taken, police had amassed significant evidence implicating Latlip. They had found clothing abandoned by Latlip that matched witness descriptions. They had conducted an investigation to verify an anonymous tip that someone named Steven Latlip lived in the general area of the crimes and had confessed to stabbing people in the past. And they had contacted Florida authorities to obtain reports that would ultimately reveal Steven Latlip's history of rapes involving the same *modus operandi*: entry through a window, knife from the kitchen, concealment of the suspect's face using underwear or panty hose, money taken from the

---

[1] For the same reasons, there is no merit to Latlip's separate claim that trial counsel was ineffective for failing to file a reply brief regarding inevitable discovery after the hearing on the motion to suppress. *See United States v. Mathison*, 157 F.3d 541, 551 (9th Cir. 1998) (client not Constitutionally entitled to have counsel take futile measures).

- 4 -

victim's purse, and threats to hurt a child if a child was present.

It is especially difficult to overturn a finding of inevitable discovery on appeal because such a finding is "essentially factual," turning as it does on witness credibility regarding a sequence of events. *United States v. Lang*, 149 F.3d 1044, 1047-48 (9th Cir. 1998). Such findings are reviewed only for clear error. *Id.* at 1046. Steven Latlip was not arrested until the DNA test results were obtained, but law enforcement need not be blamed for its extra caution. In all likelihood, it was not clearly erroneous for the trial judge to accept the investigating officer's testimony regarding how evidence was gathered. That evidence, as a source of independent probable cause, would probably make a blood draw inevitable and excuse the premature collection procedure in this case. *See Nix v. Williams*, 467 U.S. 431, 444 (1984). Thus, there was nothing ineffective about counsel's strategic decision not to appeal the Fourth Amendment issue. The state court's rejection of this ineffective assistance claim was not contrary to, nor was it an unreasonable application of, federal law.

## II. Failure to Investigate Mitigating Evidence

Latlip also complains that he received ineffective assistance of counsel when his attorney failed to investigate mitigating evidence relating to his alcoholism and his history of mental illness. Under Arizona law in effect at the time of sentencing, the trial judge was required to consider as a mitigating factor whether "[t]he defendant's capacity to appreciate the wrongfulness of the defendant's conduct or to conform the defendant's conduct to the requirements of law was significantly impaired, but not so impaired as to constitute a defense to prosecution." Ariz. Rev. Stat. § 13-702(D)(2) (2002).

The pre-sentence report contained an account of Latlip's struggle with alcohol and drug use, his traumatic childhood at the hands of abusive parents, and a previous diagnosis of schizophrenia. In the sentencing hearing, the trial judge asked counsel whether there would be evidence concerning Latlip's history of alcoholism, mental illness, and any other mitigating factors. The defense attorney answered no, explaining

- 5 -

that the alcohol use was already clear to the court and Latlip had resigned himself to whatever sentence he might receive. Latlip understood that in the best possible scenario he would receive a sentence of 35 years, effectively the rest of his natural life. The attorney added that he had not known of Latlip's mental health issues before reading the pre-sentence report. The judge asked Latlip if he cared to comment on these mitigating facts and he declined. The judge then imposed aggravated, consecutive sentences totaling more than 200 years. The judge stated that Latlip was one of the most dangerous people he had ever met and that if he was allowed "to be on the streets running with the rest of society, that we're all in a great deal of jeopardy." The judge added that he did not know whether alcohol or mental condition had anything to do with Latlip's dangerous propensities.

In the death penalty context, counsel's utter failure to investigate significant mitigating evidence may, and often does, constitute ineffective assistance of counsel if prejudice results to the defendant. *See, e.g.*, *Williams v. Taylor*, 529 U.S. 362, 399 (2000); *Belmontes v. Ayers*, 529 F.3d 834, 859 (9th Cir. 2008); *Ainsworth v. Woodford*, 268 F.3d 868, 873-78 (9th Cir. 2001); *Mayfield v. Woodford*, 270 F.3d 915, 933 (9th Cir. 2001). However, the same rule does not obtain here, where the State did not seek the death penalty. The Supreme Court has expressly declined to establish the standard for ineffective assistance claims in non-capital sentencing proceedings. *Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("We need not consider the role of counsel in an ordinary sentencing, which may involve informal proceedings and standardless discretion in the sentencer, and hence may require a different approach to the definition of constitutionally effective assistance."). "[S]ince *Strickland*, the Supreme Court has not delineated a standard which should apply to ineffective assistance of counsel claims in noncapital sentencing cases. Therefore . . . there is no clearly established federal law as determined by the Supreme Court in this context." *Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006) (internal citations omitted). As with the previous argument, the state

1 court's rejection of this ineffective assistance claim was not contrary to, nor was it an
2 unreasonable application of, federal law.
3   IT IS THEREFORE ORDERED that the Report and Recommendation of the
4 Magistrate Judge (Doc. 22 ) is accepted.
5   IT IS FURTHER ORDERED that the Clerk of the Court enter judgment denying
6 Petitioner's Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254
7 (Doc. # 1) and dismissing it with prejudice.  The Clerk shall terminate this action.
8
9   DATED this 2nd day of February, 2009.

_____
Neil V. Wake
United States District Judge